## PIKE *v.* SCOTT.

### RACKLEY *v.* SCOTT.

### FOOTE & *a* *v.* SCOTT.

A lien for lumber and materials used in erecting a building, and furnished by virtue of a contract with the owner, is secured by an attachment made within ninety days from the time the last materials were furnished under the contract.

In a suit brought to secure the lien, it is not necessary to allege in the declaration that they were furnished under a contract.   It is enough if it appear, from the writ and return, that the purpose is to secure and preserve the plaintiff's lien.

ASSUMPSIT, to recover for materials furnished to the defendant for erecting a dwelling-house.   In the first action, the writ contained a special command to attach the dwelling-house on a lot of land (particularly described), and the interest of the defendant in

the land, in order to secure and preserve the plaintiff's lien for the debt set forth in the writ. The declaration was for boards and other lumber and timber sold and delivered, and it contained an allegation that the materials sued for were furnished for erecting the dwelling-house described. The officer's return, after describing what was attached, stated that the attachment was made in order to secure and preserve the plaintiff's lien thereon. The defendant pleaded the general issue, and with it a brief statement denying that the plaintiff had acquired a lien. Facts found by a referee.

The plaintiff and the defendant, in the fall of 1878, made a contract in which the plaintiff agreed that he would furnish all the lumber and timber for the erection of a house, except shingles and clapboards. The lumber was to be delivered in parcels as wanted, and the plaintiff was to wait for his pay until the house was completed.

Under this contract the plaintiff furnished the defendant lumber to the amount of $1,322.44, and the defendant paid $100 on the account. The lumber was used for erecting the house, except that charged April 29, 1879 (83 feet of boards and labor, $1.66), which was the only charge within ninety days before the plaintiff's attachment in this action. The water from one side of the roof was carried off in two tin conductors, which were connected by iron pipes with box drains made of boards, covered with earth, which conveyed the water to the sewers in the highway, and the boards in question were used to make the box drains.

The defendant was in possession of the land on which the house was erected, under an agreement to purchase, but he did not receive his deed until January 23, 1879. Before the attachment the defendant mortgaged the house and land.

The defendant excepted to the refusal of the referee to quash the writ, because it was not alleged that the materials were furnished for the defendant's building under a contract with the owner. The referee found for the plaintiff for $1,222.44, reserving the question whether the plaintiff had gained and preserved a lien.

In the second action, the writ, declaration, and return are the same as in the first. The plaintiff's claim is for paints and oil furnished, under a contract similar to the contract with Pike. Goods to the amount of $12.99 were furnished within ninety days of the attachment. The whole amount due the plaintiff under the contract was $121.93. One McIntire, an attaching creditor, excepted to the refusal of the referee to quash the writ, because it did not set out in the declaration the statute giving the lien, and because the declaration was in assumpsit and the writ had reference merely to preserving the lien after its creation.

In the third action, the plaintiff's claim is for hardware furnished for the erection of the house under a contract similar to that with Pike for the lumber. The plaintiff claimed to recover $161.38.

All of the hardware was furnished more than ninety days before the attachment, except six pounds of nails, used in constructing outside cellar steps to the L. The writ, declaration, and return are the same as in the first action.

*Hall* and *Smith*, for the plaintiffs.

*Dodge*, for the defendant.

*Carter*, for subsequent attaching creditors.

STANLEY, J. The statute gives a lien to any person who, by himself or others, performs labor or furnishes materials to the amount of fifteen dollars or more for erecting, altering, or repairing a house or other building or appurtenances, by virtue of a contract with the owner, which lien continues for ninety days after such labor is performed or materials are furnished, and may be secured by attachment, the writ and return distinctly expressing that purpose. G. L., *c.* 139, *ss.* 10, 11. The essential requisites of the lien are furnishing the lumber or materials for the building or appurtenances under a contract with the owner, and an attachment within ninety days. The referee has found that the plaintiff furnished lumber, some of it within ninety days, under a contract with the owner; and that it was not used on the building, but was used in constructing drains through which the water from the roof was conducted to the sewer in the highway. These facts bring the case within the statute. It is not material that the lumber was not used on the building, for the drains on which it was used were appurtenant to the building. They would pass as such by a conveyance of the land and building. *Donaldson* v. *Wood*, 22 Wend. 395, 400; *McDermott* v. *Palmer*, 8 N. Y. 383, 386; *Moran* v. *Chase*, 52 N. Y. 346; Phil. Mech. Liens, *ss.* 164, 165, 202. The question whether the lumber was furnished under a contract with the owner was one of law and fact, to be found by the trier of the facts, and the report of the referee has established the existence of such a contract. The question then is, for what amount the plaintiff is entitled to judgment against the property. The contract as found by the referee was, that the plaintiff agreed to furnish and the defendant to purchase all the lumber to build his house, except shingles and clapboards; and, so far as appears, both parties performed the contract. It was an entire contract; and if any part of the lumber was delivered within ninety days of the attachment, the lien was preserved for the whole. *Calef* v. *Brinley*, 58 N. H. 90. If the materials were furnished under one entire contract, one indivisible lien for the whole was created thereby. Phil. Mech. Liens, *s.* 324. Each lot of lumber furnished was not a separate cause of action, but a continuous dealing, and the right of securing it was not barred

until ninety days after the delivery of the last lot. The fact of a change in the ownership of the lot is not material. When the defendant contracted with the plaintiff for the lumber, he was in possession of the lot on which the buildings were erected, under an agreement to purchase, which was subsequently completed. The fact that the defendant had mortgaged the premises does not affect the case. The lien had attached before the mortgage was made, and was superior to any rights of the mortgagee. *Cheshire Prov. Inst.* v. *Stone*, 52 N. H. 365. The fact that there was no express agreement for a lien is not material. The lien is a creation of statute, and attaches to the building and the interest of the owner in it by force of the statute.

Exception is taken that there was no allegation that the materials were furnished by virtue of a contract. There was no occasion for such an allegation. The statute only requires that the writ and return shall express the purpose for which the attachment is made. The command to attach was in order to secure and preserve the lien of the plaintiff, and the officer's return was of an attachment to secure and preserve the plaintiff's lien. This gives all the information to which the defendant was entitled, and the subsequent attaching creditors have no greater rights than the defendant. G. L., c. 139, s. 12; *Hill* v. *Callahan*, 58 N. H. 497; *Emerson* v. *Emerson*, 58 N. H. 413; *Mathewson* v. *Powder Works*, 44 N. H. 289; *Carlton* v. *Patterson*, 29 N. H. 580.

The plaintiff is entitled to judgment against the property in the first suit for $1,222.44, in the second suit for $119.93, and in the third for $161.30.

*Judgment on the report.*

CLARK, J., did not sit: the others concurred.