53  435|
70L 688|

CHARLES C. HUGHES et al.

*v.*

LAMBERTVILLE ELECTRIC LIGHT, HEAT AND POWER COMPANY.

1. The claim of an attaching creditor, a citizen of New Jersey, will be preferred to that of the assignee, a resident of another state, who claims under an assignment for the benefit of creditors, and consequently to one who claims under such assignee by virtue of a *bona fide* purchase subsequent to the levying of the attachment.

2. Wires and insulators which are used in forming and completing the connection between an electric light and power plant and the dwellings, stores and other public places, for the purpose of conveying or transmitting light and heat thereto, are fixtures within the provisions of the Mechanics' Lien law.

On application for directions as to distribution of funds.

*Mr. James Buchanan,* for the receiver.

*Mr. D. Stuart Robinson* (of Philadelphia), *pro se.*

*Mr. Charles A. Skillman,* for Zeigler's administrators.

*Mr. Henry A. Fluck,* for Morrison, assignee.

BIRD, V. C.

The defendant is an insolvent corporation. It was organized for the purpose of constructing an electric light and power plant. It constructed a building suitable for the purpose, and placed therein all of the machinery and appliances necessary for completely transmitting light and power throughout the city of Lambertville. It erected poles at suitable distances on the sides of several streets. It strung wires from the building, after securely attaching them to the necessary apparatus upon said poles, and from said wires and poles the Southern Electric Company strung wires to and into a large number of houses for the purpose of transmitting light into said houses. After the work was completed in accordance with the intention, it was put in operation and light was thereby communicated to the dwellings, stores and other business places. Soon after the practicability of the undertaking was demonstrated, the company was obliged to confess its insolvency, and, in winding up its affairs, the receiver has been presented with a claim in the name of the Southern Electric Company. This claim, with all its other assets, was assigned by the latter company, in 1893, for the benefit of its creditors. While its assets were still in the hands of the assignee and in process of administration, one Zeigler, a resident of New Jersey, and creditor of the Southern Electric

Company, issued an attachment against it, and levied upon the credit of said company in the hands of the defendant, the Lambertville Light and Power Company. As this attachment was issued and levied in January of 1894, in March following the assignee sold and assigned the claim of the Southern Electric Company to one Morrison, who now claims to be entitled to such dividends as the Southern Electric Company would be entitled to if it had made no assignment, and, consequently, disputes the claim of Zeigler under his attachment. That the claim of Zeigler must be satisfied out of any credit to which the Southern Electric Company would be otherwise entitled, is so clear that discussion is unnecessary. See *Moore* v. *Bonnell, 2 Vr. 98.*

But Morrison insists that he is entitled to the benefit of the Mechanics' Lien law, and therefore entitled to be preferred as to the proceeds of the sale of the plant. This claim to a lien arises from the fact that the Southern Electric Company supplied the wires and insulators, and did the work or labor of connecting the said wires, with the poles and wires erected upon and along the streets, with the dwelling-houses, stores and other places of business, and that because of such connection they became part of the plant.

This claim to the benefit of the Lien law should be supported. The fifth section of the Mechanics' Lien law (*Rev. p. 669*) provides that " any fixed machinery or gearing or other fixtures for manufacturing purposes, shall be considered a building for the purpose of this act."

The phrase " or other fixtures for manufacturing purposes " is as comprehensive as the language will admit of. Certainly whatever appliances may be used for the accomplishment of a given purpose, through the use of fixtures in a manufacturing establishment, may fairly be considered a building within this act. Whatever is so attached to the freehold is to be denominated a fixture, and is essential to the successful operation of the plant, will pass with the freehold.

Without the connection to the dwellings, stores and other public places by means of the wires as above stated, the plant

could not be operated according to the design. Such connection is absolutely essential. These wires connect with the main wires which were strung upon the poles along the streets, which last-named wires were all connected with the building or plant in which the electricity is generated.

It is very well settled that where a thing is annexed to the freehold by the owner, with the intention of making it a part thereof, and it is essential to the enjoyment of the freehold, it will be regarded as a fixture. *Blancke* v. *Rogers, 11 C. E. Gr. 566; Potts* v. *New Jersey Arms and Ordnance Co., 2 C. E. Gr. 396; Crane* v. *Brigham, 3 Stock. 29; McMillian* v. *New York Waterproof Co., 2 Stew. Eq. 610; Watson* v. *Watson Manufacturing Co., 3 Stew. Eq. 484.*

In *Van Keuren* v. *Central Railroad of New Jersey, 9 Vr. 165,* it was held that a railroad track, consisting of ties to which were fixed the iron rails, constructed for the purposes above indicated, was a fixture and passed with the title to the land.

In *Philbrick* v. *Ewing, 97 Mass. 133,* it was held that a water-pipe attached to a main pipe in the street and running across the land of a third person into a dwelling-house upon the side of the street, for the purpose of carrying water into such dwelling, was a fixture and passed with a conveyance of the lot.

In *The Badger Lumber Co.* v. *The Marion Water Supply, Electric Light and Power Co., 48 Kan. 182,* it was held that poles placed in the street upon which wires were strung, which wires were connected with an electric light and power plant, were within the Kansas statute, which secured a lien upon buildings and the appurtenances to laborers and material-men.

In *Beatty* v. *Parker, 141 Mass. 523; 6 N. E. Rep. 754,* it was held that " a pipe connecting a house with a sewer built in the street, necessary to the use of the house and included in the contract for building it, is a part of the house, and it is immaterial whether it is inside or outside of the walls of the house, under or above ground, whether extended one foot or thirty feet, or whether the fee of the land in the street was or was not in the owner of the lot on which the house was built." A

petition to enforce a mechanics' lien for the labor in placing said pipe was sustained.

In *Steger* v. *Arctic Refrigerating Co., 11 L. R. A. 580,* it was decided that "a mechanics' lien for material furnished in laying pipes for a refrigerating company, which supplies vapor for 'cold storage' to customers at a distance through pipes in the ground, extends to the whole plant as an entirety and may be enforced against the ground upon which the manufactory is located, although the pipes are laid on the land of strangers."

The fact that these poles, which support the wires along the streets, stand upon land the title to which may be in others, and that the wires which connect the main wires with the several dwellings, stores and other public places pass into and are fixed to the dwellings and stores and public buildings of persons who were strangers to the company except as they gave their consent to such erection and the making of such connections, does not alter the rights of lien claimants. The effort is not made to enforce the lien against the land upon which the poles are erected, nor against the dwellings, stores or other places into which the connected wires are extended, but only against the plant itself and land whereon it stands. It is this which the Lien law makes liable for materials and labor, and not the thing which becomes a fixture. For I apprehend that whether things furnished for a structure, whether a dwelling or manufactory, whether such thing be brick, lumber or machinery, a lien will lie whether the thing be actually placed in the building or not. The two cases last above cited show that it makes no difference in whom the ownership of the fee may be, upon whose land or in whose dwelling the poles may be set or the wires extended.